## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANATOLIY VERETNOV, | : | Civil No. 1:21-CV-01644 |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | |
| | : | |
| DEREK OBERLANDER, *et al.*, | : | |
| | : | |
| Respondents. | : | Judge Jennifer P. Wilson |

## MEMORANDUM

Before the court is a petition for habeas corpus pursuant to 28 U.S.C. § 2254 filed by Anatoliy Veretnov ("Petitioner"). (Doc. 1.)  Several of the claims raised in the petition are procedurally defaulted, and Petitioner's catch-all argument against procedural default is insufficient to excuse the default.  Only two claims are not procedurally defaulted: an ineffective assistance of counsel claim regarding witness identification and a verdict against the weight of the evidence claim.  The ineffective assistance of counsel claim was properly addressed by the Superior Court and the weight of the evidence claim is non-cognizable in a federal habeas corpus case.  Therefore, the court will dismiss the petition.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The procedural background in this case is extensive.  Petitioner was convicted under three criminal actions encompassing numerous charges including robbery, assault, criminal conspiracy, theft by unlawful taking, receiving stolen

property, criminal mischief, kidnapping and recklessly endangering another

person: (1) CP-14-CR-0001128-2010; (2) CP-14-CR-0001137-2010; and (3) CP-

14-0001160-2010.  These three cases were joined for purposes of a single trial:

> [Petitioner]'s trial was joined with the trials of three codefendants, Alexi Semionov (Semionov), Maksim Illarionov (Illarionov), and Dmitriy Litvinov (Litvinov), facing similar charges.
>
> On February 9, 2011, the consolidated trial [(first trial)] of the four codefendants began.  After three days of trial, however, codefendant Semionov decided to enter a guilty plea.  The Commonwealth thereafter informed the trial court of its intention to call Semionov as a witness against the remaining three codefendants.  Upon the motion of all defendants, the trial court granted a mistrial on February 14, 2011.

*Commonwealth v. Veretnov,* 1979 MDA 2012, 2013 WL 11253373, at *1 (Pa.

Super. Sept. 10, 2013) (unpublished mem.) (formatting altered).

As relevant here, the victim for the charges under docket number CP-14-CR-

1128-2010, Min Suh ("victim") failed to identify Petitioner until at the courthouse

during the first trial:

> [Victim] had trouble seeing [Petitioner] in the courtroom, to which [the Commonwealth] mused to the [trial] court that the victim should be able to get a closer look.  After the [trial c]ourt recessed for lunch, the victim was seated on a bench across from the elevators outside the courtroom with [an assistant district attorney].  It was during this time that [Petitioner] was brought out of the elevator with his co-defendant, likely in handcuffs and shackles as is customary procedure in Centre County. . . . [T]he victim . . . did not identify [Petitioner] until immediately after the lunch break when he stated that he saw [Petitioner] in front of the elevator.

PCRA Ct. Op. & Order, 7/28/20, at 5 (record citation omitted).

[Petitioner]'s second joint trial with Illarionov and Litvinov began on June 18, 2012.  "During the second trial, the victim again testified that the first time he identified [Petitioner] was in front of the elevator."  *Id.* (record citation omitted).  "The victim also testified that he immediately recognized [Petitioner] upon exiting the elevator during the [first] trial, despite [Petitioner] having changed his appearance, and stating 'that one is the driver.'"  *Id.*  at 7 (record citation omitted).  The victim also gave a detailed description of [Petitioner]'s appearance during the night of the robbery.  *Id.* at 7-8.

Also, during [Petitioner]'s second trial, "co-defendant Litvinov's confession [was] introduced by way of a transcript of a call between [Litvinov] and Lindsay Coatman[, which] was . . . redacted to remove all descriptions and references to [Petitioner] other than 'the guy that was on the computer.'"  PCRA Ct. Op., 11/6/20, at 6.  Coatman testified "that when he met [Petitioner], he saw him at the computer . . ."  *Id.* at 7.  During closing arguments, the Commonwealth referred to both Litvinov's redacted confession and Coatman's testimony, implying that [Petitioner] was the "guy that was on the computer" referenced in Litvinov's redacted confession.  *Id.* at 5, 8; PCRA Ct. Op. & Order, 7/28/20, at 9.

*Commonwealth v. Veretnov*, 262 A.3d 463, 2021 WL 3412142, *1–3 (Pa. Super. Ct. Aug. 4, 2021).

On June 22, 2012, Petitioner was found guilty by a jury of one count each of robbery, theft by unlawful taking or disposition, receiving stolen property, kidnapping, and simple assault, and three counts of criminal conspiracy under action number CP-14-CR-1128-2010.  The same jury determined that Petitioner committed one count of robbery, criminal attempt, and criminal conspiracy to commit robbery and two counts of simple assault and reckless endangerment under action number CP-14-CR-1137-2010.  Likewise, the jury found Petitioner guilty of

one count each of theft by unlawful taking or disposition, receiving stolen

property, and criminal mischief, seven counts of robbery, and nine counts of

criminal conspiracy under action number CP-14-CR-1160-2010.  On July 20,

2012, Petitioner was sentenced to 30 ½ to 61 years imprisonment.  *See*

*Commonwealth v. Veretnov,* 85 A.3d 484 (Pa. 2014).

Petitioner timely filed post-sentence motions on July 27, 2012, seeking a

new trial on the basis that the trial court erred in denying his motion for severance

and the verdicts were against the weight of the evidence, among other challenges.

*Com. v. Veretnov*, No. 1979 MDA 2012, 2013 WL 11253373, at *1 (Pa. Super

Sep. 10, 2013); (Doc. 26-15).  These post-sentencing motions were concluded as

follows:

> Following a hearing, the trial court filed an opinion and order on
> October 18, 2012 that erroneously indicated [Petitioner]'s post-
> sentence motions were granted in part and denied in part.  Trial Court
> Opinion and Order, 10/18/12, at 1.  On October 23, 2012, the trial court
> subsequently entered an amended opinion and order, stating that
> [Petitioner]'s post-sentence motions were, in fact, denied.  Trial Court
> Amended Opinion and Order, 10/18/12, at 1, ¶¶ 2–3.

*Id*.

Petitioner then filed a timely notice of appeal on November 9, 2012.  *Id*, at

*2.  On November 26, 2012, Petitioner filed a timely Rule 1925(b) statement

raising the following three issues: (1) the verdicts were against weight of the

evidence; (2) the trial court abused its discretion in not granting the motion for

severance; and (3) the trial court erred by finding that Petitioner did not suffer prejudice by being tried jointly. (Doc. 26-20.) On November 29, 2012, the trial court issued an opinion finding that Petitioner's three claims "were fully and adequately addressed" in the October 18, 2012 order denying the post-sentencing motions. *Veretnov*, 2013 WL 11253373, at *2; (Doc. 26-21).

Petitioner filed a direct appeal on February 21, 2013 raising the following issues:

> I. Did the trial court commit an abuse of discretion in not granting the motion for severance (and the subsequent motions for reconsideration of the denial of severance) as filed by [Petitioner]?
>
> II. Did the trial court err in finding that [Petitioner] did not suffer prejudice by being tried jointly with co-defendants?
>
> III. Did the trial court commit an abuse of discretion in finding that the verdicts in [trial] court case Nos. 1137–2010 and 1160–2010 were not against the weight of the evidence?

(Doc. 26-22, p. 22.) On September 10, 2013, the Superior Court of Pennsylvania denied Petitioner's appeal. *Veretnov*, 2013 WL 11253373, at *2; (Doc. 26-25). On February 6, 2014, the Pennsylvania Supreme Court denied Petitioner's petition for allowance of appeal. *Com. v. Veretnov*, 85 A.3d 484 (Pa. 2014); (Doc. 26-26). It is noteworthy that Attorney Ronald McGlaughlin ("trial counsel") represented Petitioner at trial and on direct appeal.

On December 24, 2014, Petitioner filed a timely pro se Post-Conviction Relief Act ("PCRA") petition. *See Veretnov*, 2017 WL 4675918, at *1; (Doc. 26-27.)[1] This PCRA petition raised the following five issues: (1) trial counsel was ineffective for failing to make a timely and specific objection; (2) trial counsel was ineffective for failing to impeach the credibility of the Commonwealth's informant; (3) trial counsel was ineffective for failing to fully investigate the credibility of the lead detective who did not know who signed or served the initial search warrant; (4) trial counsel was ineffective for failing to call witnesses; and (5) trial counsel was ineffective for violating Petitioner's Sixth Amendment rights. (Doc. 26-27, p. 4.)[2]

Attorney Justin P. Miller was appointed as Petitioner's PCRA counsel. (Doc. 27-2.) Attorney Miller then filed an amended PCRA petition on July 10, 2015, raising a single issue of ineffective assistance of trial counsel for failing to call Pennsylvania State Trooper Leigh Barrows as a witness. (Doc. 27-8.) The PCRA court issued a notice of its intent to dismiss that petition without a hearing on October 15, 2015. (Doc. 27-10.) On November 9, 2015, an order was docketed denying PCRA relief. (Doc. 27-11.) In the opinion, the PCRA court determined

---

[1] Petitioner signed the PCRA petition on December 14, 2014, it is stamped received by the PCRA court on December 24, 2024. (Doc. 26-27.)

[2] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

that trial counsel was not ineffective for neglecting to call the witness in question.
(Doc. 27-10.)

On November 30, 2015, Petitioner filed a document complaining about
Attorney Miller's failure to raise other issues that Petitioner wanted the court to
consider in the PCRA proceeding.  (Doc. 27-12.)

On February 11, 2016, Petitioner filed a second PCRA petition, alleging that
he should be granted the right to file a *nunc pro tunc* appeal from the denial of
PCRA relief because Attorney Miller abandoned him by not pursuing a requested
appeal from the November 9, 2015 order denying the PCRA petition.  (Doc. 27-
13.)  Petitioner alleged that he never received the PCRA court's Pa.R.Crim.P. 907
notice of intent to dismiss his petition without a hearing.  (*Id*.)  On August 8, 2016,
the second PCRA petition was granted allowing Petitioner to file an appeal from
the dismissal of the first PCRA petition.  (Doc. 27-15.)  The PCRA court appointed
Attorney Julian G. Allatt as counsel, and she filed a notice of appeal in the first
PCRA case on September 6, 2016.  (Doc. 27-16.)

On appeal, Petitioner raised the following two issues: (1) ineffective
assistance of trial counsel for failing to call Trooper Barrows; and (2) ineffective
assistance of the prior PCRA counsel for failing to raise four additional issues.
(Doc. 27-18.)  The PCRA court filed a Pa.R.A.P. 1925(a) opinion on October 19,
2016, requesting that the Superior Court remand the matter for the PCRA court to

7

consider Petitioner's claims that PCRA counsel, Attorney Miller, rendered

ineffective assistance of counsel because Petitioner had not received the

Pa.R.Crim.P. 907 notice.  (Doc. 27-19.)  The Superior Court agreed and remanded

the matter back to the PCRA court to consider the merits of Petitioner's ineffective

assistance of counsel claims regarding Attorney Miller.  (Doc. 27-22.)

On September 17, 2018, Petitioner filed an amended PCRA petition before

the PCRA court raising the following five issues: (1) Petitioner's sentence was

illegal under *Alleyne v. United States*; (2) trial counsel was ineffective for failing to

object to the in-person identification of Petitioner by witness Minh Suh; (3) trial

counsel was ineffective for failing to object to the introduction of testimony of

witness Minh Suh; (4) trial counsel was ineffective for failing to object to the

Prosecutor's reference during closing arguments; and (5) the Prosecutor's

reference in closing arguments violated the state or federal constitutions and

undermined any adjudication of Petitioner's guilt or innocence.  (Doc. 28-3.)  The

PCRA court summarized the procedural history following remand:

> On March 6th, 2018, this court issued a Notice of Intention to Dismiss
> [Petitioner's] PCRA [petition] pursuant to Pa.R.Crim.P. 907.
> [Petitioner] subsequently filed objections to the notice and requested an
> extension to file an amended PCRA [petition].  [The PCRA court
> granted Petitioner's request to file an amended petition, and Petitioner]
> filed his amended PCRA [petition] on September 17th, 2018.  On
> February 6th, 2019, this court again issued a notice of intent to dismiss
> the PCRA [petition].  [Petitioner] filed his objections on March 18th,
> 2019, and on March 22nd, 2019, this court sustained [Petitioner's]

objections and granted [Petitioner] leave to amend his PCRA [petition]. An evidentiary hearing was held on October 10th, 2019, in which the Commonwealth conceded [Petitioner] would need to be resentenced pursuant to *Alleyne v. United States*, 570 U.S. 99 (2013).

(Doc. 28-19, p. 3.)  On July 28, 2020, the PCRA court granted Petitioner's PCRA petition in part, ordering that he be resentenced pursuant to *Allenye*, and denied the petition in all other respects.  (*Id*., p. 11.)

Petitioner then filed a notice of appeal on August 21, 2020.  (Doc. 28-20.) This appeal addressed the following four issues: (1) trial counsel was ineffective for failing to object to the in-person identification of Petitioner by witness Minh Suh; (2) trial counsel was ineffective for failing to object to the introduction of testimony of witness Minh Suh; (3) trial counsel was ineffective for failing to object to the Prosecutor's reference during closing arguments; and (4) the Prosecutor's reference in closing arguments violated the state or federal constitutions and undermined any adjudication of Petitioner's guilt or innocence. (Doc. 28-22.)  The Superior Court denied this appeal on August 4, 2021.  (Doc. 28-26.)  Petitioner did not appeal to the Pennsylvania Supreme Court.

In accord with the PCRA court's July 28, 2020 order, Petitioner was resentenced on December 7, 2021 to an aggregate sentence of 20 ½ years to 41 years with credit for 4,206 days previously served applied cumulatively across the minimum sentences in sequence.  (Doc. 29-4.)

Petitioner filed a 28 U.S.C. § 2254 petition in this court on May 7, 2021, but later opted to have his petition withdrawn without prejudice so that he could file one, all-inclusive petition. *Veretnov v. Oberlander*, No. 1:21-CV-00934-JPW-EW (M.D. Pa. June 16, 2021).

Petitioner filed the instant petition on September 20, 2021. (Doc. 1.) This court received and filed the petition on September 24, 2021. (*Id.*) Petitioner asserts three grounds in his petition: (1) ineffective assistance of trial counsel; (2) prosecutorial misconduct; and (3) the verdict is against the sufficiency and weight of the evidence. (Docs. 1, 1-1.) Additionally, Petitioner asserts a generic, catch-all ineffective assistance of counsel claim that if any claims raised in his § 2254 petition are procedurally defaulted, then it is not his fault for not properly presenting such claims in the state court proceedings. (Doc. 1-1, pp. 36–37.)

## VENUE

Under 28 U.S.C. § 2241(d), a petition for a writ of habeas corpus under Section 2254 can be filed in either the district where the petitioner is in custody, or in the district where the petitioner was convicted and sentenced. 28 U.S.C. § 2241(d). Petitioner was convicted and sentenced in Centre County, Pennsylvania, which is located in this district. *See* 28 U.S.C. § 118(b). Therefore, venue in this district is proper.

### STANDARD OF REVIEW

Habeas corpus is an "'extraordinary remedy' reserved for defendants who were 'grievously wronged' by the criminal proceedings." *See Dunn v. Colleran*, 247 F.3d 450, 468 (3d Cir. 2001) (quoting *Calderon v. Coleman*, 525 U.S. 414, 146 (1998)).  The exercise of restraint by a federal court in reviewing and granting habeas relief in state court criminal proceedings is appropriate due to considerations of comity and federalism.  *See Engle v. Isaac*, 456 U.S. 107 (1982). "The States possess primary authority for defining and enforcing the criminal law. In criminal trials they also hold the initial responsibility for vindicating constitutional rights.  Federal intrusions into state criminal trials frustrate both the States' sovereign power and their good-faith attempts to honor constitutional law." *Id.*  States also have a recognized interest in the finality of convictions that have survived direct review within the state court system.  *See Brecht v. Abrahamson*, 507 U.S. 619, 620 (1993).

A district court may entertain an application for a writ of habeas corpus filed by a person in state custody "only on the ground that he is in custody in violation of the Constitution or laws of the United States."  28 U.S.C. § 2254(a).  If a claim presented in a § 2254 petition has been adjudicated on the merits in state court proceedings, habeas relief cannot be granted unless:

> the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

established [f]ederal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* § 2254(d).

### EXHAUSTION REQUIREMENT

A federal court may not grant a writ of habeas corpus on a claim brought by an individual in custody pursuant to a state court judgment unless: (1) "the applicant has exhausted the remedies available in the courts of the State;" (2) "there is an absence of available State corrective process;" or (3) "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(A), (b)(1)(B); *see also Wilkerson v. Sup't Fayette SCI*, 871 F.3d 221, 227 (3d Cir. 2017). Section 2254(c) provides that "[a]n applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). Thus, when a state prisoner has failed to exhaust the legal remedies available to him in the state courts, federal courts will typically refuse to entertain a petition for writ of habeas corpus. *Whitney v. Horn*, 280 F.3d 240, 250 (3d Cir. 2002). It is the petitioner who bears the burden of establishing the exhaustion requirement has been satisfied. *See Lines v. Larkins*, 208 F.3d 153, 159 (3d Cir. 2000).

"[T]he exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). To satisfy the exhaustion requirement, a petitioner must invoke "one complete round" of the applicable state's appellate review process, thereby giving the courts of that state "one full opportunity" to resolve any issues relevant to such claims. *Id*. at 845 (holding that a petitioner must present every claim raised in the federal petition to the state's trial court, intermediate appellate court, and highest court before exhaustion is considered satisfied). To "fairly present" a claim, the petitioner must present his or her "factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999).

The failure to properly present claims to the state court generally results in a procedural default. *Lines*, 208 F.3d at 150–60. "When a claim is not exhausted because it has not been 'fairly presented' to the state courts, but state procedural rules bar the applicant from seeking further relief in state courts, the exhaustion requirement is satisfied because there is 'an absence of available State corrective process.'" 28 U.S.C. § 2254(b). In such cases, however, applicants are considered to have procedurally defaulted their claims and federal courts may not consider the merits of such claims "unless the applicant establishes 'cause and prejudice' or a

'fundamental miscarriage of justice' to excuse his or her default." *McCandless*,

172 F.3d at 260 (*citing Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).

DISCUSSION

**A. Petitioner's Ineffective Assistance of Counsel Claims Fail.**

Petitioner argues that trial counsel rendered ineffective assistance of counsel

in four ways: (1) failing raise a proper objection under *Bruton v. United States*, 391

U.S. 123 (1968); (2) failing to object to false statements by the Prosecutor; (3)

failing to seek suppression of the witness identification; and (4) the cumulative

effect of the errors.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the

accused shall enjoy the right . . . to have the assistance of counsel for his defence."

U.S. Const. amend VI.  The purpose of the right to the assistance of counsel is to

ensure a fair trial, and "the Court has recognized that 'the right to counsel is the

right to the effective assistance of counsel.'" *Strickland v. Washington*, 466 U.S.

668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)).

"The benchmark for judging any claim of ineffectiveness must be whether

counsel's conduct so undermined the proper functioning of the adversarial process

that the trial cannot be relied on as having produced a just result." *Id.*  "The Sixth

Amendment guarantees reasonable competence, not perfect advocacy judged with

the benefit of hindsight." *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003).  The clearly

established federal law as to an ineffective-assistance-of-counsel claim is
*Strickland*, which sets forth the following two-prong analysis.

Under the first prong of *Strickland*, the petitioner must establish that
counsel's performance was deficient.  466 U.S. at 687.  "*Strickland's* first prong
sets a high bar."  *Buck v. Davis*, 137 S. Ct. 759, 775 (2017).  To establish that
counsel's performance was deficient, the petitioner must establish that "counsel's
representation fell below an objective standard of reasonableness."  *Strickland*, 466
U.S. at 688.  "Judicial scrutiny of counsel's performance must be highly
deferential."  *Id.* at 689.  As such, the court "must apply a 'strong presumption'
that counsel's representation was within the 'wide range' of reasonable
professional assistance," *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting
*Strickland*, 466 U.S. at 689), and "[t]o overcome that presumption, a defendant
must show that counsel failed to act 'reasonabl[y] considering all the
circumstances[.]'"  *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting
*Strickland*, 466 U.S. at 688).  "The challenger's burden is to show 'that counsel
made errors so serious that counsel was not functioning as the 'counsel' guaranteed
the defendant by the Sixth Amendment.'"  *Harrington*, 562 U.S. at 104 (quoting
*Strickland*, 466 U.S. at 687).

Under the second prong of *Strickland*, the petitioner must establish
prejudice.  *Strickland*, 466 U.S. at 687.  To do so, the petitioner must show a

reasonable probability that, if not for counsel's errors, the result of the proceeding would have been different. *Id.* at 694. The petitioner "need not prove that the evidence would have been insufficient if not for counsel's errors . . . [or] 'that counsel's deficient conduct more likely than not altered the outcome.'" *Saranchak v. Sec'y, Pa. Dep't of Corr.*, 802 F.3d 579, 588 (3d Cir. 2015) (quoting *Strickland*, 466 U.S. at 693). Rather, the issue is whether there is a reasonable probability of a different result. *Id.* "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "That requires a 'substantial,' not just 'conceivable,' likelihood of a different result." *Pinholster*, 563 U.S. at 189 (quoting *Harrington*, 562 U.S. at 112).

To prevail on an ineffective-assistance claim, a petitioner must satisfy both prongs of *Strickland*. A court can choose which prong of the standard to apply first, and it may reject an ineffectiveness claim on the ground that the petitioner was not prejudiced without addressing whether counsel's performance was deficient. *Strickland*, 466 U.S. at 697.

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Even under *de novo* review, the standard for judging counsel's representation is a most deferential one." *Premo v. Moore*, 562 U.S. 115, 122 (2011). And "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult."

*Harrington*, 562 U.S. at 105.  When the state court has decided the claim on the merits, "[t]he question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'"  *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).  "And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."  *Id.*

Petitioner argues that trial counsel failed to properly raise a *Bruton* violation on direct appeal, failed to object to an insufficient redaction under *Bruton*, failed to object to false statements made in the Prosecutor's closing arguments, and failed to seek repression of witness' identification of Petitioner in the court hallway.  (Doc. 1-1, pp. 8–25.)  Additionally, Petitioner alleges that the cumulative effects of trial counsel's mistakes rise to the level of a Sixth Amendment violation.  (Doc. 1-1, p. 8.)

### 1. *Bruton* Violations

Petitioner raises two separate allegations of ineffective assistance of counsel surrounding alleged *Bruton* violations: (1) that trial counsel failed to raise a *Bruton* violation on direct appeal; and (2) that trial counsel failed to object to the insufficiently redacted transcript of Litvinov's confession.  (Doc. 1-1.)  While the

PCRA petition and subsequent appeals addressed some alleged *Bruton* violations, the Petitioner frames his two current challenges differently enough that these challenges are novel. Thus, they are unexhausted and procedurally defaulted.

In the Superior Court, Petitioner raised one ineffective assistance of counsel claim based on a *Bruton* violation: "trial counsel was ineffective for failing to object to the prosecutor's reference during closing arguments to statements made by a co-defendant that specifically implicated [Petitioner] in violation of the trial court's January 14, 2011 order redacting said statements pursuant to <u>Bruton v. United States</u>." (Doc. 28-22.) The PCRA court held the following:

> Petitioner failed to establish that he was prejudiced by DA Parks-Miller's closing argument, that the statement was the product of bad faith or prosecutorial misconduct, and that a new trial is warranted. As such, [trial counsel] cannot be found ineffective for failing to object during closing argument, and Attorney Miller cannot be ineffective for failing to raise this issue in Petitioner's previous PCRA.

(Doc. 28-19, p. 11.) The Superior Court affirmed the PCRA court's opinion. (Doc. 28-26, p. 8.)

Petitioner frames the *Bruton* issue quite differently in this petition. Therefore, the issues of ineffective assistance of trial counsel for failing to raise the *Bruton* violation on direct appeal has not been exhausted. Likewise, the issue of ineffective assistance of trial counsel for failing to object to the improperly redacted transcript of Litvinov's confession has not been exhausted. Considering

the period in which to raise these issues before the state court has expired, these issues are procedurally defaulted and will not be considered by this court.

### 2. False Statements by Prosecutor

Petitioner alleges that trial counsel rendered ineffective assistance by failing to object when the prosecutor allegedly made false statements to "rehabilitate and bolster the credibility" of witness John Johnstonbaugh and when the prosecutor allegedly "lied extensively in order to prejudice [Petitioner] and bolster the credibility of Johnstonbaugh." (Doc. 1-1, pp. 16, 18.) However, these claims were not raised before a state court at any time.

The Superior Court addressed a challenge to the Prosecutor's reference to Petitioner as "the guy that was on the computer" during closing arguments. (Doc. 28-26, pp. 8–9.) However, this is Petitioner's first time raising ineffective assistance of counsel claims concerning the Prosecutor's closing argument bolstering the statements of witness John Johnstonbaugh. Therefore, this issue is unexhausted. Since the period to raise the issue before the state court has passed, it is procedurally defaulted, and the court will not address it further.

### 3. Witness Identification

Petitioner alleges trial counsel was ineffective for failing to seek suppression of a witness' identification of Petitioner in the court hallway. (Doc. 1-1, pp. 20–25.) This issue has been consistently raised in PCRA proceedings.

The PCRA court addressed this issue on its merits:

> Despite failing to identify Petitioner in a photo lineup, the totality of the circumstances show that the victim had an independent basis for identifying Petitioner, and therefore the identification was admissible. Any taint of the out of court identification was also alleviated on cross-examination through Attorney McGlaughlin's questioning, which pressed the victim about his previous failure to identify Petitioner and that the victim was only partially' looking at the driver on the night of the kidnapping.  N.T. Jury Trial, 06/19/12, pg. 524.

> Due to all of the reasons stated above, the identification of Petitioner was the result of an independent basis and therefore was reliable.  Thus, attorney McGlaughlin cannot be found ineffective for failing to object to the identification, and Attorney Miller cannot be ineffective for failing to raise the issue in a prior PCRA.

(Doc. 28-19, p. 9.)  The Superior Court found "that the PCRA court properly concluded that [Petitioner] failed to establish that he was prejudiced by trial counsel's failure to object to the identification evidence because trial counsel cross-examined the victim about his identification of [Petitioner] and there was other evidence linking [Petitioner] to the robbery."  (Doc. 28-26, p. 8.)

The Superior Court's determination that Petitioner failed to demonstrate any prejudice by trial counsel's failure to objective to the identification addresses *Strickland*'s second prong.  Considering the PRCA court found that an independent basis for the identification made the identification admissible, the court finds that the Superior Court's determination was reasonable under *Strickland*.

### 4. Cumulative Effect

Petitioner also argues that the cumulative effect of trial counsel's ineffective assistance results in prejudice.  (Doc. 1-1, pp. 8–9.)

"The cumulative error doctrine allows a petitioner to present a standalone claim asserting the cumulative effect of errors at trial that so undermined the verdict as to constitute a denial of his constitutional right to due process."  *Collins v. Sec'y of Pennsylvania Dep't of Corr.*, 742 F.3d 528, 542 (3d Cir. 2014).  To establish that cumulative errors were not harmless, a defendant must show that they had a "substantial and injurious effect or influence in determining" the verdict.  *Albrecht v. Horn*, 485 F.3d 103, 139 (3d Cir. 2007) (citation omitted).  This quantum of prejudice is essentially the same as the *Strickland* prejudice standard.  *Id.* (citing *Whitney*, 280 F.3d at 258–59 & n.18).

"[A] claim of cumulative error must be presented to the state courts before it may provide a basis for habeas relief."  *Collins v. Sec'y of Pennsylvania Dep't of Corr.*, 742 F.3d at 543 (citing 28 U.S.C. § 2254(b)(1)(A) (exhaustion requirement)).  Here, Petitioner did not present his cumulative error claim to the state courts.  Because "[i]t is now too late for him to return to the state courts to exhaust that claim," "it is therefore procedurally defaulted and not properly before us."  *Id.*

### 5. Procedural Default

Finally, Petitioner asserts that "if any of the claims presented by this [Petitioner] are considered to be procedurally defaulted, then the default should be excused because the default is no fault of [Petitioner]'s and he did everything in his power to obtain prior relief." (Doc. 1-1, p. 37.)

Regarding the ineffective assistance of trial counsel claims, Petitioner cities *Coleman* and *Martinez v. Ryan*, 566 U.S. 1 (2010). (*Id.*, pp. 36–37.) Petitioner is accurate: there are exceptions to the bar on consideration of procedurally defaulted claims. *See Martinez*, 566 U.S. at 10. One such exception provides that a federal habeas court may consider the merits of a procedurally defaulted claim when the petitioner establishes cause for the procedural default and actual prejudice because of the alleged violation of federal law. *Coleman*, 501 U.S. at 750. "To show cause and prejudice, 'a petitioner must demonstrate some objective factor external to the defense that prevented compliance with the state's procedural requirements.'" *Cristin v. Brennan*, 281 F.3d 404, 412 (3d Cir. 2002) (quoting *Coleman*, 501 U.S. at 753). Because there is no Sixth Amendment right to the assistance of counsel during state collateral proceedings, the ineffective assistance of counsel during those proceedings generally does not constitute cause to excuse a procedural default. *See Coleman*, 501 U.S. at 754–55.

In *Martinez*, the United States Supreme Court created a narrow exception to this rule: a prisoner may establish cause for the procedural default of an ineffective-assistance-of-trial-counsel claim by demonstrating the ineffective assistance of his counsel in the "initial-review collateral proceedings," which is defined as collateral proceedings that "provide the first occasion to raise a claim of ineffective assistance at trial." 566 U.S. at 8–9.

"*Martinez*'s equitable exception applies to states that require prisoners to await state habeas to raise ineffective-assistance claims." *Richardson v. Superintendent Coal Twp. SCI*, 905 F.3d 750, 760 (3d Cir. 2018). "It also applies to states, like Pennsylvania, whose procedures do not strictly bar earlier review but typically do not afford an opportunity to raise ineffective-assistance claims until state habeas." *Id.*

*Martinez*'s exception has two prongs. The "exception is available to a petitioner who can show that: 1) his procedurally defaulted ineffective assistance of trial counsel claim has 'some merit'; and that 2) his state-post conviction counsel was 'ineffective under the standards of *Strickland v. Washington*.'" *Workman v. Superintendent Albion SCI*, 915 F.3d 928, 937 (3d Cir. 2019) (citations omitted).

The *Martinez* exception applies only to attorney error in the initial-review collateral proceedings, not appeals from those proceedings. *Norris v. Brooks*, 794

F.3d 401, 404 (3d. Cir. 2015.)  Here, the initial-review collateral proceedings included representation by Attorney Miller, who filed the amended petition on the initial round before the CRA court, and Attorney Allatt, who filed the amended petition following the Superior Court's remand back to the PCRA court.  Neither of these attorneys raised the procedural defaulted claims of ineffective assistance of trial counsel addressed above.

Without addressing whether these claims have merit, the court finds that Petitioner has failed to plead that either of these attorneys were ineffective under the *Strickland* standard.  Instead, he suggests ineffective assistance of PCRA counsel by stating that any default was simply not his fault.  This suggestion does not address either of the required prongs under *Strickland*.  Therefore, he has not succeeded in overcoming the procedural default through the exception created in *Martinez*.

### B.  Petitioner's Prosecutorial Misconduct Claims Fail.

Next, Petitioner alleges prosecutorial misconduct premised on a *Bruton* violation, a misrepresentation of facts and testimony during closing arguments, and assisting the victim in false identification by presenting him an out-of-court lineup that was unduly suggestive.  (Doc. 1-1, pp. 26–28.)

Attorney Allatt appeared to raise the issue of prosecutorial misconduct in the September 17, 2018 PRCA petition with the following heading:

> Whether trial counsel was ineffective for failing to object to the in-person identification of Petitioner by Commonwealth Witness Minh Suh on the basis of prosecutorial misconduct where the attorney for the Commonwealth in bad faith sought to prejudice Petitioner by subjecting Petitioner to a suggestive, pretrial "lineup" procedure without the presence of counsel which resulted, for the first time, in Petitioner's identification by Commonwealth witness Minh Suh.

(Doc. 28-3, p. 12.) However, the text of the argument focuses on ineffective assistance rather than addressing prosecutorial misconduct. (*Id.*, pp. 14–17.) In fact, in the final paragraph of Petitioner's January 10, 2020 Post-Hearing Brief, Attorney Allatt specifically states that prosecutorial misconduct was <u>not</u> raised in the PCRA petition:

> It bears stating for the record, that the administration of former Centre County District Attorney Stacy Parks Miller is simply not entitled to the inferences and presumptions that should typically inure to the benefit of the Office of the District Attorney. Ms. Parks Miller and those in her office that subscribed to her philosophy of prosecution brazenly employed means and methods that were beyond the pale. That the former District Attorney is still without a law license because of her actions while she was the chief law enforcement officer for Centre County is sufficient to deprive her office of any deferential consideration that this Court might otherwise afford to the prosecution. *The instant petition for Post-Conviction relief does not raise claims sounding in prosecutorial misconduct.* However, to the extent the resolution of issues before the court invite consideration of whether there may be an innocent or coincidental explanation for the conduct of the District Attorney apparent on the record in this case that prejudiced [Petitioner], Petition urges the court not to set aside its common sense. Ms. Parks Miller's conduct as District Attorney deprived her office – and therefore the citizens of Centre County – of the benefit of any doubt.

(Doc. 28-16, p. 16) (*emphasis added*).

In its July 28, 2020 opinion, the PCRA court addressed Attorney Allatt's,

references to prosecutorial misconduct:

> Counsel for Petitioner also raised the issue of potential prosecutorial misconduct on behalf of former DA Parks-Miller, invoking the inference that foul play was likely involved simply based on her involvement in the case.  The record is devoid of evidence supporting Petitioner's assertion, and it is improper for the Court to consider the former DA's subsequent suspension and loss of license as evidence to create the inference that because DA Parks-Miller violated the Rules of Professional Conduct on another occasion, she must have engaged in similar behavior here.  In the absence of clear evidence supporting this allegation, the Court declines to find any misconduct on behalf of the Commonwealth.

(Doc. 28-19, p. 11.)

Attorney Allatt did not appeal the issue of prosecutorial misconduct to the

Superior Court.  (Doc. 28-22.)

Petitioner now raises prosecutorial misconduct premised on a *Bruton*

violation, a misrepresentation of facts and testimony during closing arguments, and

assisting the victim in false identification by presenting him in an out-of-court

lineup that was unduly suggestive.  (Doc. 1-1, pp. 26–28.)  Petitioner does not raise

misconduct based on Attorney Parks Miller's suspension and loss of license.

This issue, as framed by Petitioner, was not presented to the PCRA court.

First, the general subject of prosecutorial misconduct was merely referenced in a

heading, not in the text of the petition.  Second, Attorney Allatt's briefing

specifically states the general subject of prosecutorial misconduct was not raised in

the petition.  Third, Attorney Allatt's paragraph referring to prosecutorial misconduct is based on Attorney Parks Miller's suspension and not for the reasons argued in the instant petition.  Furthermore, the PCRA court's discussion of prosecutorial misconduct was not appealed to the Superior Court.  Therefore, the issue of prosecutorial misconduct is unexhausted.  Because the period to raise such issues before the state court has expired, the issue is procedurally default.

Petitioner acknowledges that this argument may be procedurally defaulted, and argues that "if any of the claims presented by this [Petitioner] are considered to be procedurally defaulted, then the default should be excused because the default is no fault of [Petitioner]'s and he did everything in his power to obtain prior relief." (Doc. 1-1, pp. 36–37.)

As explained above, the Supreme Court has explained that following a petitioner's procedural default, "federal habeas review of the claims [are] barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750, 111 S.Ct. 2546.  To show cause and prejudice, "a petitioner must demonstrate some objective factor external to the defense that prevented compliance with the state's procedural requirements." *Id.* at 753, 111 S.Ct. 2546. "To show a fundamental miscarriage of justice, a petitioner must demonstrate that

he is actually innocent of the crime . . . by presenting new evidence of innocence."
*Keller v. Larkins*, 251 F.3d 408, 415–16 (3d Cir.2001) (citations omitted).

Petitioner fails to meet either the cause and actual prejudice or a
fundamental miscarriage of justice under *Coleman*.[3]  He does not point to an
objective factor external to the defense, and he does not argue actual innocence.
He simply implies ineffective assistance of PCRA counsel by stating that any
default is not his fault.  (Doc. 1-1, pp. 36–37.)  Therefore, this claim is barred.

### C. Plaintiff's Weight and Sufficiency of the Evidence Claims Fail.

Petitioner argues that "a rational (properly instructed) fact-finder should
NOT have found [Petitioner] guilty beyond a reasonable doubt."  (Doc. 1-1, p. 32.)
He starts by setting forth the legal standard for a sufficiency of the evidence
challenge.  (*Id*., pp. 29–33.)  He then sets forth the standard for a state abuse of
discretion argument based on a ruling on the weight of the evidence.  (*Id*., pp. 33–
35.)  Finally, he presents a block quote from the Superior Court's denial of his
weight of the evidence challenge on direct appeal.  (*Id*.)

Essentially, Petitioner has attempted to fuse a sufficiency of the evidence
claim with a weight of the evidence claim.  However, these are two distinct issues.

---

[3] The *Martinez* exception does not apply because this is not an ineffective assistance of counsel
claim.  *Martinez*, 566 U.S. at 8–9.

The Supreme Court compared these two types of challenges in *Tibbs v. Florida*, 457 U.S. 31 (1982) to demonstrate how they differ:

> [A] conviction rests upon insufficient evidence when, even after viewing the evidence in the light most favorable to the prosecution, no rational factfinder could have found the defendant guilty beyond a reasonable doubt. A reversal based on the weight of the evidence, on the other hand, draws the appellate court into questions of credibility. The "weight of the evidence" refers to "a determination [by] the trier of fact that a greater amount of credible evidence supports one side of an issue or cause than the other."

457 U.S. at 37–38 (quoting *Tibbs v. State*, 397 So.2d 1120, 1123 (Fla. 1981)).

### 1. Sufficiency of the Evidence

This is the first time Petitioner has raised a sufficiency of the evidence challenge. As discussed below, the weight of the evidence challenge was exhausted on direct appeal. However, no sufficiency of the evidence claim was ever presented to the Superior Court. (Docs. 26-26, 27-22, 28-26.) Therefore, this argument is unexhausted. Since the time to raise this issue before the state court has passed, the issue is procedurally defaulted.

Again, the court acknowledges Petitioner's catch-all argument asserting excuse for any procedurally defaulted argument at the end of his brief in support. (Doc. 1-1, pp. 36–37.) However, Petitioner fails to meet either the cause and actual prejudice or the fundamental miscarriage of justice standard under

*Coleman*.[4]  He does not demonstrate an objective factor external to the defense, and he does not demonstrate actual innocence.  He simply implies ineffective assistance of PCRA counsel by stating that any default was not his fault, which is not sufficient.  (Doc. 1-1, pp. 36–37.)  Therefore, the sufficiency of the evidence claim is barred.

### 2.  Weight of the Evidence

In contrast, Petitioner's weight of the evidence argument was exhausted on direct appeal.  (Docs. 26-20, 26-21, 26-22, 26-26.)

However, a claim that a conviction is against the weight of the evidence is non-cognizable in a federal habeas corpus case.  *See Marshall v. Lonberger*, 459 U.S. 422, 434–35 (1983) (federal courts are not permitted "to redetermine [the] credibility of witnesses whose demeanor has been observed [only] by the state trial court")).  The credibility of witnesses and the resolution of conflicts of evidence fall within the exclusive province of the factfinder and, therefore, are beyond the scope of federal habeas review.  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  Therefore, Petitioner's weight of the evidence challenge will be dismissed.

---

[4] The *Martinez* exception does not apply because this is not an ineffective assistance of counsel claim.  *Martinez*, 566 U.S. at 8–9.

## CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254.  A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  Here, jurists of reason would not find the disposition of this case debatable.  Accordingly, no COA will be issued.

## CONCLUSION

For the reasons set forth above, the court will dismiss the petition for writ of habeas corpus.

A separate order will be issued.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: December 14, 2023